IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.                                    Misc. No. 3:14mc5

RECKITT BENCKISER
PHARMACEUTICALS, INC.,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the PETITION OF THE FEDERAL TRADE COMMISSION FOR AN ORDER ENFORCING CIVIL INVESTIGATIVE DEMAND (Docket No. 2), the FEDERAL TRADE COMMISSION'S MOTION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND MEMORANDUM IN SUPPORT THEREOF (Docket No. 38),[1] the claim of attorney-client privilege in response to the Civil Investigative Demand ("CID") made by Reckitt Benckiser Pharmaceuticals, Inc. ("Reckitt"), and the Court's ORDER TO SHOW CAUSE (Docket No. 6, amended in Docket No. 20).

## BACKGROUND

On June 13, 2013, the Federal Trade Commission ("FTC") issued a CID to Reckitt pursuant to which the FTC sought to determine whether Reckitt had engaged in unfair methods of

---

[1] Counsel are instructed that motions and memoranda are entirely separate documents with different legal significance and thus are not to be melded into a single document.

competition with respect to its branded drug, Suboxone.   In

particular, the FTC is:

> Investigating whether Reckitt abused public
> regulatory processes, including filing a
> citizen petition with the U.S. Food and Drug
> Administration ("FDA") and negotiating with
> competing manufacturers, to maintain its
> monopoly in the market for Suboxone, an opioid
> treatment distributed through prescription,
> rather than by clinic-based methods.

PETITION OF THE FEDERAL TRADE COMMISSION FOR AN ORDER ENFORCING

CIVIL INVESTIGATIVE DEMAND (Docket No. 2), p. 1 ("FTC

Petition").

In response to the CID, Reckitt produced almost 600,000

documents, but has withheld approximately 28,000 documents on

the grounds of attorney-client privilege.  Reckitt describes the

withheld documents as consisting of: "(a) emails containing

confidential requests made by Reckitt to its attorneys seeking

legal advice regarding the content and preparation of various

documents; (b) drafts of those various documents accompanying

these confidential requests provided by Reckitt to its lawyers

for review; (c) comments, notes, and mark-ups of the draft

documents prepared by Reckitt's counsel and provided to Reckitt;

and (d) draft letters, memoranda, position statements and other

documents prepared by Reckitt's attorneys and shared with

Reckitt in the course of providing legal advice." Docket No. 33,

at 8.   The FTC describes the documents as "drafts and other

documents relating to [the] petition, including draft memoranda, draft letters, draft press releases, draft public relations documents, and draft reports, among others." Docket No. 24, at 6.

The FTC Petition asked the Court to issue an order requiring Reckitt to produce to the FTC the documents that Reckitt has withheld on ground of privilege. Specifically, the FTC contends that certain types of documents are not privileged, namely: "(1) drafts of documents published or intended to be published; (2) attorney notes or edits related to those drafts; (3) emails related to or accompanying the drafts; and (4) attorney advice provided based on the drafts, such as in emails and memoranda." Id. at 9. The Court issued an Order to Show Cause, that was later amended, scheduling a hearing on the privilege issue. Docket No. 6; Docket No. 20. The FTC filed a MEMORANDUM IN SUPPORT OF PETITION OF THE FEDERAL TRADE COMMISSION FOR AN ORDER ENFORCING CIVIL INGESTIGATIVE DEMAND (Docket No. 24). Reckitt has responded (Docket No. 25); the FTC has replied (Docket No. 35) and the issue is now ripe for review. Thereafter, the FTC, acting under the erroneous belief that it prevailed on its motion for an order enforcing the CID (Docket No. 2) and to elaborate on its view that blanket enforcement was required, filed the FEDERAL TRADE COMMISSION'S MOTION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND MEMORANDUM IN

3

SUPPORT THEREOF (Docket No. 38) which also has been fully briefed and is ripe for review.

## DISCUSSION

## I.   Existence Of The Claimed Privilege

Reckitt argues that it cannot be required to produce the documents sought by the FTC because those documents, which "includ[e] draft memoranda, draft letters, draft press releases, draft public relations documents, and draft reports, among others", are protected from disclosure by the attorney-client privilege. Docket No. 24 at 6. "When the attorney-client privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure." In re Grand Jury Subpoena (Grand Jury 2003), 341 F.3d 331, 335 (4th Cir. 2003) (internal citations and quotations omitted). In the Fourth Circuit, the attorney-client privilege:

> ...applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

4

Id. (quoting United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982 (per curium))).

The proponent carries the burden of establishing the existence of the attorney-client relationship, the applicability of the privilege to the specific communication at issue, and the absence of waiver. Grand Jury 2003, 341 F.3d at 335 (quoting Jones, 696 F.2d at 1072). "Because this privilege impedes the full and free discovery of the truth, it must be narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principal of utilizing all rational means for ascertaining truth." Grand Jury 2003, 341 F.3d at 335.

The FTC argues that attorney-client privilege does not apply to the withheld documents because "the Fourth Circuit has long held that 'the attorney-client privilege does not apply to communications in connection with a proposed public disclosure'", which would here include Reckitt's published citizen petition, and the other documents that it seeks in the FTC Petition. Docket No. 24 (citing United States v. Under Seal, 33 F.3d 342, 354 (4th Cir. 1994)). Reckitt takes issue with that point, arguing that the Fourth Circuit has rejected the FTC's "purely legal argument" and instead has recognized "the distinction between confidential communications regarding a document and the later publication of the document itself."

Docket No. 33, at 17.   Reckitt further argues that the privilege is inapplicable only when the attorneys serve "as mere conduits of information to be disclosed publicly" rather than as providers of legal advice, and that this distinction turns on the client's expectations of confidentiality.   Id. at 18, 22 (citing Grand Jury 2003).

In the Fourth Circuit, "it is the unquestioned rule that the mere relationship of attorney-client does not warrant a presumption of confidentiality." United States v. (Under Seal), 748 F.2d 871, 875 (4th Cir. 1984).   Instead, "the privilege applies only when the persons claiming the privilege [have] as a client consulted an attorney for the purpose of securing a legal opinion or services."   Id.   Further, "even where the confidential communications of the client are present, privilege will not apply when disclosure is intended." Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 412-14 (Dist. Md. 2005).

The Fourth Circuit has held that attorney-client privilege "does not apply to the situation where it is the intention or understanding of the client that the communication is to be made known to others." In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984).   This is because that situation does not satisfy the requirement that a communication falling under attorney-client privilege be confidential.   To determine whether

confidentiality was intended, "[r]ather than look to the existence of the attorney-client relationship or to the existence or absence of a specific request for confidentiality, a court must look to the services which the attorney has been employed to provide, and determine if those services would reasonably be expected to entail the publication of the client's communications." United States v. (Under Seal), 748 F.2d at 875 (holding that a client retaining an attorney to investigate only the possibility of filing papers did not have the required intent to publish); See also In re Grand Jury Proceedings, 727 F.2d at 1358 (holding that, when a client decides to publish a prospectus before retaining an attorney, that client has demonstrated the required intent to publish and attorney client privilege does not apply).

The Fourth Circuit has also held that, "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information, as well as 'the details underlying the data which was to be published' will not enjoy the privilege." United States v. Under Seal, 33 F.3d at 354 (quoting United States v. (Under Seal), 748 F.2d at 875). The Court of Appeals further clarified that:

7

> "the details underlying the published data
> are the communications relating the data,
> the document...to be published containing
> the data, all preliminary drafts of the
> document, and any attorney's notes
> containing material necessary to the
> preparation of the document. Copies of
> other documents, the contents of which were
> necessary to the preparation of the
> published document will also lose the
> privilege."

United States v. (Under Seal), 748 F.2d at 875, n.7. However,
"if any of the non-privileged documents contain client
communications not directly related to the published data, those
communications, if otherwise privileged, must be removed by the
reviewing court before the document may be produced." Id.

The determination of (1) what services the lawyer was
employed to provide and (2) the client's understanding whether
the information will be revealed to others are both matters of
fact. Thus, unless the parties stipulate to those points or
they are not contested, decisions on both points must be based
on record evidence.

Reckitt argues that the communications underlying the
published documents do not lose their protection under the
attorney-client privilege because they have the status of "legal
advice" that the company intended to be confidential. It
contends that the attorney-client privilege does not exist when
the attorney serves as a "mere conduit" for communication
information to the public and that where the attorney provides

"legal advice regarding the content of various documents," the attorney-client privilege applies in full force.  Docket No. 33, at 22.[2]  Reckitt's positions misapprehend the law in this circuit.

As discussed above, the Fourth Circuit has held that the relevant inquiry is not whether the client merely funneled unaltered information through an attorney to the public, but whether, at the time the attorney and client were working together, the client had enlisted the attorney's services in order to prepare a document that would eventually be released to the public.  If the client has solicited the attorney's services to facilitate the production of a public document, the Fourth Circuit has held that the attorney-client privilege does not extend to the published data and the details underlying it. That, of course, could include any of the documents that Reckitt has labeled "legal advice", if the "legal advice" qualifies as a detail underlying the published data.

Reckitt also argues that the most recent Fourth Circuit case on point, In re: Grand Jury Subpoena ("Grand Jury 2003"), 341 F.3d 331 (4th Cir. 2003), weighs in favor of extending attorney-client privilege to the documents that it seeks to

---

[2] The parties agree that the question here is whether the privilege exists, not whether a privilege has been waived.  See Oral Argument Transcript, October 27, 2014 (Docket No. 37) at 3-5, 37-38.

withhold.   In Grand Jury 2003, the Fourth Circuit "reiterated the client's intent to publish as the touchstone for determining whether confidentiality was expected and whether attorney-client privilege would attach." Neuberger, 230 F.R.D. at 414.   In Grand Jury 2003, the client included a false statement in the green card application that he sent to the Immigration and Naturalization Services.   When the client was questioned by the FBI, he indicated that he had answered the question as he had based on previous conversations with an attorney.   After being subpoenaed, the attorney refused to answer questions about the alleged advice and claimed attorney-client privilege, which the district court and Fourth Circuit recognized.   The Fourth Circuit stated that "the underlying communications between Counsel and [client] regarding his submission...[were] privileged, regardless of the fact that those communications may have assisted [the client] in answering questions in a public document." Grand Jury 2003, 341 F.3d at 336.   "The Government's question asked Counsel to reveal the substance of legal advice that she may have given Appellant concerning his submission [of the form] — a confidential communication that clearly falls within the scope of the privilege." Id.

Reckitt contends that Grand Jury 2003 is to be construed as contradicting previous Fourth Circuit decisions on the subject. That contention fails for two reasons.   First, there is a

difference between Grand Jury 2003 and the Circuit's previous cases that explains the holding in Grand Jury 2003 and that limits its reach.   In Grand Jury 2003, "the client had not employed the attorney for purposes of publishing any information; he had consulted with the attorney for legal advice."   Neuberger, 230 F.R.D. at 414.   That is a quite different circumstance than the Fourth Circuit cases in which a client retains an attorney for the purpose of "assist[ing] in preparing [a] prospectus which was to be published" (In re Grand Jury Proceedings, 727 F.2d at 1358) or for helping to draft securities filings to be filed with the Securities Exchange Commission (United States v. Under Seal, 33 F.3d at 354) or for preparing the kinds of documents that are intended for public disclosure.

In Grand Jury 2003, the client consulted the attorney for legal advice and not for assistance in making a public disclosure.   While the client in Grand Jury 2003 eventually made a public disclosure that contained some of the information discussed with his attorney, the client did not solicit the attorney's services for the purpose of drafting the disclosure. Rather, the relationship was initiated for the purposes of communicating legal advice which would later allow the client to decide what to do with such advice.   Under those circumstances, the decision in Grand Jury 2003 is consistent with the precept

11

that "the attorney-client privilege <u>does</u> protect communications made between attorney and client when the client is only considering publication...and is seeking legal advice regarding that possibility." <u>In re Grand Jury Proceedings</u>, 22 F.3d at 354 (emphasis in original).   And, considered on its facts, <u>Grand Jury 2003</u> does not alter earlier circuit law governing documents prepared to be published.

Second, Reckitt's view of <u>Grand Jury 2003</u> necessitates the conclusion that <u>Grand Jury 2003</u> overrules, <u>sub silento</u>, a long-standing line of opinions that establish the principle that the attorney-client privilege does not apply to communications in connection with a proposed public disclosure of the sort here at issue.   That, of course, cannot be done other than by an <u>en banc</u> decision.   See <u>McMellon v. United States</u>, 387 F.3d 329, 334 (4th Cir. 2004) ("[W]hen there is an irreconcilable conflict between opinions issued by three-judge panels of this court, the first case to decide the issue is the one that must be followed, unless and until it is overruled by this court sitting <u>en banc</u> or by the Supreme Court.")   And, even if <u>Grand Jury 2003</u> departed from that precept, it certainly would not have done so silently.

Reckitt also relies on <u>Upjohn Co. v. United States</u>, 449 U.S. 383 (1981).   But, <u>Upjohn</u> does not control the privilege issue in this case.   In <u>Upjohn</u>, Upjohn Co. was a pharmaceutical company that, after discovering that a foreign subsidiary had

12

"made payments to or for the benefit of foreign government officials in order to secure government business", ordered its general counsel to conduct an internal investigation into the "questionable payments." Id. at 387. As part of the investigation, counsel distributed letters and questionaires to mid- and lower-level employees. The letters and questionnaires were described as "highly confidential." Id. Eventually, the investigation revealed a history of several questionable payments and Upjohn "voluntarily submitted a preliminary report to the Securities and Exchange Commission." Id. The Internal Revenue Service conducted an independent investigation and issued a summons for, among other evidence, the written questionnaires sent to Upjohn employees and "memorandums or notes of the interviews conducted...with officers and employees." Id. at 388. Upjohn claimed attorney-client privilege and refused to produce the requested documents. The Supreme Court reversed the lower courts' decision and upheld Upjohn's claim of attorney-client privilege.

Reckitt argues that the Supreme Court's ruling that the questionnaires, attorneys' notes, and memoranda concerning employee interviews were protected by attorney-client privilege in Upjohn supports its argument that the documents being sought by the FTC are likewise protected. Docket No. 33, at 10. Says Reckitt, the fact that Upjohn's "investigation was undertaken

13

with a view towards disclosing the payments to the SEC" rendered analogous the factual situations here and in Upjohn and thus warrants applying the direct holding of Upjohn in this case. Id. at 11.   Reckitt's argument fails for two reasons.   First, the "public disclosure" issue was not in front of the Supreme Court in Upjohn.   The question in Upjohn was whether the "scope of attorney-client privilege in the corporate context" extended to communications between lower-level employees and corporate counsel.   Upjohn, 449 U.S. at 386.   The Court specifically "decline[d] to lay down a broad rule or series of rules to govern all conceivable future questions in this area" and instead ruled only on the facts in front of it.   Id.   Second, the factual similarities between the situation in Upjohn and the one presented here are not as complete as Reckitt seems to think.

It appears from the Supreme Court's opinion in Upjohn that corporate counsel was enlisted by the corporation to investigate whether any improper payments were made in order to determine whether the company needed to file a notice with the proper authorities.   Id. at 386-87 (Stating that a letter sent by Upjohn referenced "possibly illegal" payments and indicated that the General Counsel's investigation was "for the purpose of determining the nature and magnitude of any payments by the Upjohn Company or any of its subsidiaries to any employee or

official of a foreign government.") Although a report was eventually submitted to the SEC as a result of this investigation, the investigation in Upjohn was not undertaken for the purpose of submitting a public report. Rather, when the investigation was conducted, Upjohn "was only considering publication" rather than seeking counsel's help in preparing it. In re Grand Jury Proceedings, 22 F.3d at 354. That fact pattern is not the case presented by this record.

In conclusion, in the Fourth Circuit, the attorney-client privilege with respect to confidential communications does not apply to published documents and the underlying details and data if, at the time the communication was made, the client intended that the document was to be made public. Therefore, "when the attorney has been authorized to perform services that demonstrate the client's intent to have his communications published...the client lose[s] the right to assert the privilege as to the subject matter of those communications." United States v. (Under Seal), 748 F.2d at 876.

It is important to note, however, that the intended publication of a communication does not eviscerate the privilege for all of the material produced for, or in connection with, publication. Rather, "if any of the non-privileged documents contain client communications not directly related to the published data, those communications, if otherwise privileged,

15

must be removed by the reviewing court before the document may be produced." United States v. (Under Seal), 748 F.2d at 875, n.7.   In other words, although some documents may not be privileged in their entirety, other documents, such as attorney's notes, communications between the attorney and client containing relevant data, and other documents which might contain "details underlying the data" might well be privileged. That determination would require an individualized inspection of the documents to ensure that only non-privileged content is disclosed.

## II.   In Camera Review

"[C]ourts are generally thought to have broad discretion to determine whether a privilege is properly asserted." Federal Election Com'n v. Christian Coalition, 178 F.R.D. 456, 461 (E.D. Va. 1998).   This determination can, and often does, involve an in camera inspection of the documents whose privilege is disputed.   Although the Supreme Court has restricted the ability of district courts to conduct an in camera review of documents that might fall under the crime fraud exception[3], there is no

---

[3] See United States v. Zolin, 491 U.S. 554 (1989).   Zolin holds in part that, "before engaging in in camera review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person...that in camera review of the materials may reveal evidence to establish the clam that the crime-fraud exception applies.   Once that showing in made, the

such restriction for other types of challenges to attorney-client privilege. See Christian Coalition, 178 F.R.D. at 462 ("While it is necessary for a party to make a prima facie showing of fraud before a court will review attorney client documents under the crime fraud exception, there is no basis for such a showing under ordinary circumstances. Additionally, there is no indication that the Supreme Court intended for its holding in Zolin to apply to a [non-analogous case]."); In re Grand Jury Proceedings, Thursday Special Grand Jury September Term, 1991, 33 F.3d 342, 350 (4th Cir. 1994) ("Zolin did not provide a general rule applicable to all in camera reviews of any material submitted by parties...Zolin does not proscribe all in camera reviews of in camera submissions absent the requisite showing.").

Deciding whether to conduct an in camera review of the documents at issue is thus within the purview of this Court. The parties are at odds as to whether in camera review would be helpful at this time. The FTC argues that it "does not believe that in camera review of the 22,327 documents by a special master is necessary at this time...[because] having a special master review all of the documents now when many of them likely do not involve a true factual dispute would be unnecessarily

---

decision whether to engage in in camera review rests with the district court." Id. at 573 (internal citations and quotations omitted).

expensive and time-consuming." Docket No. 38 at 10-11.[4]
Instead, the FTC requests that the Court issue an order
"requiring Reckitt to produce to the FTC the types of documents
[that the court's forthcoming] opinion describes as not
privileged." Id. at 11. If Reckitt continues to withhold any
documents, the FTC requests that Reckitt be required to "provide
new information on its privilege log sufficient to explain why
the documents are privileged in light of the Court's ruling."
Id. Finally, any remaining disputes would, in the FTC's
proposal, be sent to a special master for in camera review "to
resolve those conflicts on a document-by-document or category-
by-category basis." Id.

Reckitt has suggested "that the Court might benefit from in
camera review of a document from Reckitt's privilege log in
conjunction with [the FTC's] opposition...[to show] that the
FTC's demand for a blanket rejection of attorney-client
privilege is improper, and that individualized review of each
attorney-client communication contemplated by the Court is
necessary." Docket No. 39 at 17. The FTC responds that
"Reckitt's proposal to resolve the issue of privilege for over
22,000 documents on the basis of in camera review of a single
document selected by Reckitt itself is unprecedented and

---

[4] The number of documents sometimes is said to be 28,000 and at
other times 22,000. In either event, the number of documents at
issue is voluminous.

fundamentally unfair." Docket No. 40 at 11. The FTC appears to misunderstand Reckitt's proposal. Although Reckitt initially suggests that the Court review only one document of Reckitt's choosing, it does so in an attempt to convince the court that further individualized, in camera review would be necessary. It does not, as the FTC suggests, invite the Court to make a blanket ruling for all 22,327 documents based on one document analysis.

In camera review is appropriate and necessary in this case. The applicable exception to the attorney-client privilege has limits to its reach and only encompasses published documents and the underlying documents (as more fully described above). Without an in camera review of the actual documents at issue, it is not possible for the Court correctly to apply the Fourth Circuit's attorney-client privilege law, including the limitations that are inherent in that body of law. Thus, a special master will be appointed to determine the most efficient way to review the documents or categories of documents; to devise a system to determine what documents fall within the rule that excludes them from privilege as outlined herein and in controlling Fourth Circuit decisions; to set a schedule for production of such documents for in camera review; to examine the documents as to which there remains any dispute as to privilege; and to report to the Court as to whether attorney-

19

client privilege extends to said documents. To that end, Reckitt will be required to identify and produce all documents that, based on this decision, do not require further review for privilege. That must be done by April 1, 2015.

The Court previously has provided to counsel the names of three candidates to serve as Special Master and has given the parties some information about the candidates. By March 15, 2015, counsel shall advise whether, and why, there is objection to any candidate and shall state their respective preferences in order. If any party desires to suggest other candidates to serve as Special Master, it shall do so by March 15, 2015 and shall provide each candidate's experience and qualifications.

Reckitt, as the party claiming privilege, initially shall bear the fees and expenses incurred by the Special Master. The Court, however, reserves the right to reallocate that burden as a cost of the litigation upon appropriately supported motion.

The PETITION OF THE FEDERAL TRADE COMMISSION FOR AN ORDER ENFORCING CIVIL INVESTIGATIVE DEMAND (Docket No. 2) has been argued. That motion will be granted to the extent that Reckitt identifies documents that, based on this decision, do not require in camera review. Otherwise, decision will be in abeyance pending report of the Special Master. As to the FEDERAL TRADE COMMISSION'S MOTION TO ENFORCE CIVIL INVESTIGATIVE DEMAND (Docket No. 38), there is no need for argument. For the

20

reasons set forth above, that motion (Docket No. 38) will be denied.

It is so ORDERED.

_____/s/_____ _REP_

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 9, 2015